UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JOSHUA JORDAN, | ) | Civil Action No. 4:25-cv-0913-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| PAYMENT SAVER, LLC, and CASEY GRAHAM, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, alleges a state law cause of action for tortious interference with contracts and business relationships and a federal cause of action under the Lanham Act, 15 U.S.C. § 1125(a). Presently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 13).  Plaintiff filed a Response (ECF No. 18), and Defendants filed a Reply (ECF No. 20).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(e), DSC.  This report and recommendation is entered for review by the District Judge.

1

II.     **FACTS**[1]

A.     **Relevant Facts**

Plaintiff Jordan resides in Florence County and is the owner/former CEO of Prehired, LLC and the assignee of all claims Prehired may have against Defendants.  Compl. ¶ 5.  Defendant Graham resides in Forsyth County, Georgia and is the CEO of Defendant Payment Saver, LLC, d/b/a Gravy Solutions.  Compl. ¶ 6.  Payment Saver is a Georgia LLC with its principal place of business in Cumming, Georgia.  Compl. ¶ 7.  Prehired was a company that "helped individuals from diverse backgrounds build skills and transition into careers in technology sales through its innovative training program."  Compl. ¶ 12.  Prehired charged fees via Income Share Agreements (ISAs), under which members owed nothing upfront and paid a portion of income earned after being hired, starting a business, or choosing to pause their membership.  Compl. ¶ 15.  Payment Saver is a payment processing company.  Compl. ¶ 17.  On February 22, 2022, Graham published a post on his personal LinkedIn profile:

> I just learned that we had someone on our team from PreHired. That company is absolutely predatory! Taking 12.5% of the candidates monthly gross salary!!! WHAT THE ABSOLUTE HELL? Dear PreHired, Here is my mailing address .... P.O. Box 2992 Cumming, GA 30028. Send all your legal team to that address, not theirs ... We are back paying them the 12.5% that you ruthlessly took from people in desperate situations! If you are a CEO and you have anyone hired by this company, I'm asking you to back pay them what they have paid and FIRE PREHIRED & bring it on ... You will no longer take advantage of our team that are looking to get started in their career! Who will FIRE PREHIRED with me?

Compl. ¶ 18 and Ex. A.  The next day, Graham published another post on LinkedIn about Prehired:

---

[1] Plaintiff previously filed an almost identical complaint against the same Defendants in this Court, Case No.4:24-cv-890-JD-TER. In that case, Plaintiff asserted state law causes of action for defamation and tortious interference with contracts. The Court dismissed the case for lack of subject matter jurisdiction. See Order (4:24-cv-890-JD-TER at ECF No. 56). That ruling was upheld on appeal. See Jordan v. Payment Saver, LLC, No. 25-1052, 2025 WL 2105001, at *1 (4th Cir. July 28, 2025).  The present action is based on the same facts, but Plaintiff has removed the defamation cause of action and added a cause of action for violation of the Lanham Act, thereby invoking this Court's subject matter and supplemental jurisdictions pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

> Instead of paying a predatory 12.5% of your salary as an SDR And instead of paying 30k to PreHired Do yourself a favor and trust me with this. Meet Darren McKee & Erik McKee They sat on my back porch last night and shared their stories of breaking into Saas as SDR's I have zero to gain from this. Join their mailing list to learn how to break into SaaS FOR FREE. They will 100% take care of you.I 100% endorse them. Great humans. They will help you with no strings attached. Follow them and learn from them. Link in comments for SDR's and people looking to break into being one.

Compl. ¶ 21 and Ex. B.

Plaintiff alleges that "[a]s a direct result of Graham's false and misleading statements, Plaintiff has suffered losses of approximately $18,225,000 from 729 affected Prehired customers across 43 states" in addition to other damages.  Compl. ¶¶ 22-26.  He also alleges that Graham intentionally interferred with Pehired's contractual relationships with members/customers. Compl. ¶ 22.

### B.     Jurisdictional Facts

Plaintiff is a resident of South Carolina.  Compl. ¶ 5.  As alleged by Plaintiff, Payment Saver is a limited liability company organized under the laws of Georgia.  Graham Aff. ¶ 3 (previously filed in Case No. 4:24-cv-890 at ECF No. 10-2).  Payment Saver's headquarters and principal place of business are in Cumming, Georgia.  Graham Aff. ¶ 3. At no time has Payment Saver maintained offices or owned or leased real estate in South Carolina.  Graham Aff. ¶ 4. Graham, founder of Payment Saver, is a resident of Cumming, Georgia.  Graham Aff. ¶ 3. At no time has Graham been a resident of South Carolina, and Graham does not consent to jurisdiction in South Carolina.  Graham Aff. ¶¶ 3, 7. Additionally, at the time of filing of this motion, Defendants submit they have not been properly served with the complaint.

The members of Payment Saver are Casey Graham, Inc. and Arlington Private Equity Fund V, LLC. See Def. Rule 26.01 Responses ¶ H (previously filed in Case No. 4:24-cv-890 at ECF No. 12).  Casey Graham, Inc. is a Georgia Corporation with its principal place of business in Georgia.

3

Id.  The members of the Arlington Private Equity Fund V, LLC include, among others, three individuals who are citizens of South Carolina and a trust whose beneficiaries are citizens of South Carolina.  Id.

## III.     STANDARD OF REVIEW

Defendants argue that this court lacks personal jurisdiction over them because Graham resides in Georgia and Payment Saver's headquarters and principal place of business are in Georgia, and it has no offices in South Carolina and lacks the minimum contacts with the state necessary to be subjected to the jurisdiction of this court. Whether a court has personal jurisdiction over a defendant is properly challenged under Fed.R.Civ.P. 12(b)(2).  When a court's personal jurisdiction is challenged, the burden is on the plaintiff to establish that a ground for jurisdiction exists. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." Id. However, the plaintiff's showing must be based on specific facts set forth in the record.  Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc., 784 F. Supp. 306, 310 (D.S.C. 1992). The court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 404-05 (D.S.C. 2012) (internal quotations omitted); Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."). A court considering the issue of personal jurisdiction "need not credit conclusory

allegations or draw farfetched inferences." <u>Sonoco</u>, 877 F. Supp. 2d at 205 (internal quotation marks omitted).

## IV.     DISCUSSION

The present motion before the court is a Motion to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  A district court may assert personal jurisdiction over a non-resident defendant if 1) a proper statutory basis exists under the forum state's long-arm statute; and 2) assertion of jurisdiction does not overstep the bounds of constitutional due process. <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 396 (4th Cir.2003). The South Carolina Supreme Court has held that the State's long-arm statute, S.C. Code Ann. § 36-2-(803), is coextensive with the limits of the Due Process Clause. <u>ESAB Group, Inc. v. Centricut, Inc.</u>, 126 F.3d 617, 623 (4th Cir.1997); <u>see also</u> S. Plastics Co. v. S. Commerce Bank, 310 S.C. 256, 423 S.E.2d 128, 130 (S.C.1992). As a result, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." <u>ESAB Group</u>, 126 F.3d at 623. (quoting <u>Stover v. O'Connell Assocs., Inc.</u>, 84 F.3d 132, 135–36 (4th Cir.1996)) (internal quotation marks omitted); <u>see also</u> Sonoco Prod. Co. v. Inteplast Corp., 867 F. Supp. 352, 354 (D.S.C. 1994) ("Under South Carolina law, the first requirement collapses into the second."). "Thus, the pinnacle question in this case is not whether [Defendant's] activities meet the black letter requirements of South Carolina's long-arm statute, but whether its activities are sufficient to satisfy the requirements of constitutional due process." <u>Platinum Hail & Dent Co. v. Ultimate Hail & Dent Co.</u>, No. CA 6:15-1658-GRA, 2015 WL 5602618, at *3 (D.S.C. Sept. 23, 2015).

Under the due process analysis, the plaintiff must show that the defendant has sufficient "minimum contacts" with South Carolina and that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." <u>World-Wide Volkswagen Corp. v.</u>

Woodson, 444 U.S. 286, 291-92 (1980) (internal quotation marks omitted); see also International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).   A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559. Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).   This standard can be met in two ways: "by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

Under general jurisdiction, when a defendant has "continuous and systematic" contacts with the forum state, the defendant "may be sued in [the forum] state for any reason, regardless of where the relevant conduct occurred." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009). When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' i.e., comparable to a domestic enterprise in that State." Daimler AG v. Bauman, 571 U.S. 117, 159 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Like a corporation, an LLC is at home in its "place of incorporation and principal place of business." Id. at 137 (evaluating the issue of general jurisdiction over an LLC based on its place of incorporation and principal place of business).

Broad constructions of general jurisdiction are disfavored. Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir.1993).

A district court may exercise specific personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). Accordingly, specific personal jurisdiction requires "that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." CFA Inst, 551 F.3d at 292 n. 15. Specific personal jurisdiction requires there to be a nexus between the defendant's contacts with the state and the controversy. Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012).

In his complaint, Plaintiff asserts that "a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Defendants caused substantial harm to Plaintiff Jordan, a resident of South Carolina, by publishing false and defamatory statements concerning Jordan and his South Carolina-based company, Prehired." Compl. ¶ 9. Plaintiff argues that this court has both specific and general jurisdiction over Defendants. With respect to specific jurisdiction, Plaintiff argues that Defendants directed their tortious conduct toward the forum state and caused harm they knew would be suffered in the forum state. Defendants argue that Graham's LinkedIn posts did not manifest an intent to direct his content towards an audience in South Carolina and, thus, those posts do not make jurisdiction in this Court proper.

In ALS Scan, the Fourth Circuit set forth the test for specific jurisdiction in the context of "electronic activity," holding that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State,

and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." <u>ALS Scan</u>, 293 F.3d at 714.  The act "of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed."  <u>Carefirst</u>, 334 F.3d at 399 (quoting <u>ALS Scan</u>, 293 F.3d at 714) (internal quotation marks and brackets omitted).

Soon after <u>ALS Scan</u>, the Fourth Circuit considered the court's authority to exercise personal jurisdiction over an out-of-state defendant who placed information on the internet in an action with facts similar to those in the present case.  In <u>Young v. New Haven Advocate</u>, 315 F.3d 256 (4th Cir. 2002), a Connecticut newspaper published an article about "the allegedly harsh conditions at [a] Virginia prison." <u>Id.</u> at 259. The article reported the presence of Confederate Civil War memorabilia in Warden Young, the plaintiff's, office. <u>Id.</u> The warden sued the newspaper claiming the articles implied that he was a racist. <u>Id.</u>  He argued that the Virginia court had personal jurisdiction over the Connecticut defendants because "(1) the newspapers, knowing that Young was a Virginia resident, intentionally discussed and defamed him in their articles, (2) the newspapers posted the articles on their websites, which were accessible in Virginia, and (3) the primary effects of the defamatory statements on Young's reputation were felt in Virginia." <u>Id.</u> at 261–62.  In concluding that the Connecticut newspaper did not have sufficient contacts with Virginia to permit the district court to exercise specific jurisdiction over it, the Fourth Circuit noted that the critical inquiry is "whether the newspapers manifested an intent to direct their website content ... to a Virginia Audience" and that "[t]he newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers." <u>Id.</u>

In the present case, Plaintiff has failed to present evidence that Graham's posts on his LinkedIn page were directed to a South Carolina audience or that Defendants manifested an intent

to target and focus on South Carolina readers. Neither of Graham's posts mention Jordan or that Prehired was a South Carolina company or otherwise mention South Carolina. See, e.g. Adewami v. Arise Media Inc. (Nigeria), No. 8:23-CV-01065-PJM, 2024 WL 3161746, at *4 (D. Md. June 25, 2024) (finding a broadcast did not target a Maryland audience because the broadcast "never once mentions the State of Maryland"). By the context of Graham's posts, he was directing his comments at clients or potential future clients of Prehired, not at Plaintiff, and there is no evidence in the record that Prehired's clients resided in South Carolina.

Plaintiff also argues that personal jurisdiction is proper over Defendants because he was injured in South Carolina. "In-forum effects of out-of-forum conduct can constitute minimum contacts with the forum sufficient to support personal jurisdiction." Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 230 (4th Cir. 2019)(citing Walden v. Fiore, 571 U.S. 277, 287-88 (2014) and Calder v. Jones, 465 U.S. 783 (1984)). Under the "effects test," the plaintiff must establish that specific personal jurisdiction is proper by showing that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009); Carefirst of Md., Inc., 334 F.3d at 398 n. 7. The Fourth Circuit has noted, however, that "[t]here are [ ] important limitations on this principle." Hawkins, 935 F.3d at 230. The "effects" must create a connection to the forum, not just to the parties who happen to live there. Id. "[M]ere injury to a forum resident is not a sufficient connection to the forum." Walden, 571 U.S. at 290. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. There is no evidence in the record that

Graham's posts connect him to South Carolina in a meaningful way. Arguing that jurisdiction is proper here because Plaintiff resides in South Carolina and felt the injuries here "improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." Id. at 289. Plaintiff fails to make a prima facie showing that this court has specific personal jurisdiction over Defendants.

Plaintiff also argues that this court has general personal jurisdiction over Defendants. Plaintiff argues that Payment Saver has thousands of customers nationwide and given the scope of its business, it is likely that some of these customers are located in South Carolina. Plaintiff also argues that Payment Saver has at least two employees that reside in South Carolina, see LinkedIn Profiles (previously filed in 4:24-cv-0890-JD-TER at ECF No. 14-1), and one of Payment Saver's members, Arlington Private Equity Fund V, LLC, includes three members who are citizens of South Carolina and a trust whose beneficiaries are in South Carolina. See Def. Rule 26.01 Responses ¶ H.

As set forth above, corporations are subject to general jurisdiction in any state where "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919. A corporation's "place of incorporation and principal place of business are paradig[m]...bases for general jurisdiction." Daimler AG, 571 U.S. at 137; see Richards v. NewRez LLC, No. ELH-20-1282, 2021 WL 1060286, at *15–*16 (D. Md. Mar. 18, 2021) (applying Daimler to an LLC). It is the "exceptional case" when a court exercises general jurisdiction in a forum outside of those paradigm bases. Id. at 139 n.19. In Daimler AG, the United States Supreme Court held that a district court in California did not have general jurisdiction over Mercedes-Benz USA, despite the fact that the company operated multiple facilities in the state and generated 2.4 percent of its parent corporation's worldwide sales there.

Id. at 123, 139.  Although Defendants have some contacts with South Carolina, they are not so continuous and systematic as to render Defendants at home in this State. Though Payment Saver has employees and "likely" some customers in South Carolina, the Supreme Court has made clear that "in-state business ... does not suffice to permit the assertion of general jurisdiction over claims ... that are unrelated to any activity occurring in [the forum state]." BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 414, 137 S. Ct. 1549, 1558, 198 L.Ed.2d 36 (2017); see, e.g., ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 624 (4th Cir. 1997) (holding no general jurisdiction for a defendant with 26 customers in the forum state, which made up less than .01% of its nationwide sales volume); Freud Am., Inc. v. Milwaukee Elec. Tool Corp., No. 1:20CV109, 2020 WL 8248765, at *4 (M.D.N.C. June 17, 2020) (finding no general jurisdiction where the defendant had 20 employees in the forum-state); Turner v. Syfan Logistics, Inc., No. 5:15CV81, 2016 WL 1559176, at *3 (W.D. Va. Apr. 18, 2016) ("After Daimler, 'it is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.' " (quoting Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014))).

Further, the fact that one of Payment Saver's members, Arlington Private Equity Fund V, LLC, has some members that  are citizens of South Carolina is irrelevant to the question of personal jurisdiction.  "[T]he practice of disregarding a limited liability company as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject matter jurisdiction ... [t]his principle has not been applied to personal jurisdiction, which presents distinct due process issues." Mountain Funding, LLC v. Blackwater Crossing, LLC, No. 3:05-cv-513, 2006 WL 1582403, at *3 (W.D.N.C. June 5, 2006); Nubi v. Numero Grp. L.L.C., No. 7:23-CV-797, 2024 WL 2869036, at *3 (W.D. Va. June 6, 2024) (citing Mountain Funding); Toombs

v. Lowe's Home Centers, LLC, No. CV GLS-22-2244, 2023 WL 4593372, at *5 (D. Md. July 18, 2023) (citing Mountain Funding).

As the Supreme Court has stated, general jurisdiction is only appropriate when a nonresident defendant's contacts with the forum state are so ubiquitous that the nonresident defendant is "comparable to a domestic enterprise in that state." Daimler, 571 U.S. at 133 n.11. Such is not the case here. Thus, Plaintiff has failed to show that this court holds general personal jurisdiction over Defendants.

Plaintiff requests that, if the court finds that it lacks personal jurisdiction over Defendants, it transfer venue to the appropriate jurisdiction pursuant to 28 U.S.C. § 1406(a) rather than dismissing the case. When a court lacks personal jurisdiction over the defendants, 28 U.S.C. § 1406(a) authorizes the court to dismiss the action, or if it is in the interest of justice, transfer the case to an appropriate venue that would have personal jurisdiction. See Porter v. Groat, 840 F.2d 255, 257–58 (4th Cir. 1988) (stating 28 U.S.C. § 1406(a) authorizes transfer "to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district"). The decision to transfer venue pursuant to 28 U.S.C. § 1406(a) rests within the sound discretion of the district court. Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993).

"Section 1406(a) favors 'adjudications on the merits over dismissals' because of defects in personal jurisdiction." Wright v. Zacky & Sons Poultry, LLC, No. 1:14-570, 2015 WL 2357430, at *8 (M.D.N.C. May 15, 2015) (citing Jackson v. Leake, No. 1:05-00691, 2006 WL 2264027, at *10 (M.D.N.C. Aug. 7, 2006)). "Transfer had been deemed proper under section 1406 'when there is an obstacle–either incorrect venue, absence of personal jurisdiction, or both–to a prompt

12

adjudication on the merits in the forum where originally brought.'" Goldowsky v. Gareri, No. 4:17-2073-RBH-TER, 2018 WL 942278, at *5 (D.S.C. Jan. 29, 2018) (citing Dubin v. United States, 380 F.2d 813, 816 (5th Cir. 1967)), report and recommendation adopted, C/A No. 4:17-02073-RBH, 2018 WL 936382 (D.S.C. Feb. 16, 2018). Payment Saver's headquarters and principal place of business are in Cumming, Georgia, and Graham is a resident of Cumming, Georgia.  Graham Aff. ¶ 3. Therefore, transfer of this case to the United States District Court for the Northern District of Georgia is appropriate.[2]

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 13) be granted in part.  Specifically, it is recommended that the Court find that it lacks personal jurisdiction over Defendants; however, rather than dismissing the case, it is recommended that this case be transferred to the United States District Court for the Northern District of Georgia.

         s/Thomas E. Rogers, III
         Thomas E. Rogers, III
         United States Magistrate Judge

April 10, 2026
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[2] Defendants also argue that dismissal is proper pursuant to Rule 12(b)(5) for insufficient service of process. Plaintiff requests that, if service was not proper, he be allowed the opportunity to properly serve Defendants. Given the recommendation that this case be transferred rather than dismissed, the Court declines to address this issue.